©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000  Fax (619) 353-9990

Lawyers Against Lawsuit Abuse, APC
David W. Peters, SB#155449
402 West Broadway, Suite 400
San Diego, CA 92101
(619) 275-2000 / FAX (619) 353-9990
dpeters@ascervus.com

Attorney for DEFENDANT and CROSS-CLAIMANT
Glenn Douglas

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREL SPIKES<br><br>                    Plaintiff,<br><br>v.<br><br>GLENN DOUGLAS dba THE WASH HOUSE;<br>LEE FAMILY TRUST 11-27-90 and DOES 1<br>THROUGH 10, Inclusive,<br><br>                    Defendants.<br>_____<br><br>GLENN DOUGLAS dba THE WASH HOUSE,<br><br>                    Cross-Claimant,<br><br>v.<br><br>EARL J. LEE, AS TRUSTEE, THE LEE<br>FAMILY TRUST 11-27-90, and ROES 1<br>through 10, inclusive,<br><br>                    Cross-Defendants. | CASE NO: 08 CV 0690 L (POR)<br><br>**CROSS-CLAIM OF DEFENDANT<br>AND CROSS-CLAIMANT GLENN<br>DOUGLAS FOR:**<br><br>1. **DECLARATORY RELIEF**<br>2. **BREACH OF CONTRACT**<br>3. **NEGLIGENCE**<br>4. **EQUITABLE INDEMNITY**<br>5. **CONTRIBUTION &<br>APPORTIONMENT**<br>6. **INJUNCTIVE RELIEF**<br><br>Complaint Filed: 16 April 2008 |

Defendant and Cross-Claimant Glenn Douglas ("Cross-Claimant"), for himself and

himself alone respectively alleges against Cross-Defendant Earl J. Lee, as trustee, of the Lee

Family Trust 11-27-90 "Cross Defendant") as follows:

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM*   402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000 Fax (619) 353-9990

## JURISDICTION AND VENUE

1.     Jurisdiction is proper in this Court because the alleged discrimination described in the Complaint filed in this action, namely issues concerning the Access Laws (as defined below), is alleged to have occurred in this Court's judicial district.  Venue is proper in this Court because the Property (as defined below) is located in San Diego County, California.

## GENERAL ALLEGATIONS

### THE PARTIES

2.     Each of the following Defendants and Cross-Claimant is and at all times herein mentioned was, an doing business within the County of San Diego generally at or about 2472 Market Street, San Diego, California ("The Property"):

3.     Cross-Claimant is informed and believes, and thereon alleges, that Cross-Defendant Earl J. Lee, as trustee of the Lee Family Trust 11-27-90 is an individual who, in his capacity as trustee currently owns, previously owned, and/or represented or managed some or all of the  Property at some time pertinent to this action on behalf of the defendant trust.

4.     Cross-Claimant is ignorant of the true names and capacities of Cross-Defendants sued herein as ROES 1 through 10, inclusive, and therefore sue said Cross-Defendants under such fictitious names. Cross-Claimant will amend this Cross-Complaint to allege their true names and capacities when the same has been ascertained.

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM*  402 West Broadway, Fourth Floor, San Diego, CA  92101  (619) 275-2000  Fax (619) 353-9990

5.    Cross-Claimant is informed and believes, and thereon alleges, that each such fictitiously named Cross-Defendant is responsible in some manner or status for the claims set forth herein and/or in the original Complaint in this action, and that Cross-Claimant has suffered monetary and non-monetary losses which were proximately caused by these ROE Cross-Defendants' acts described herein.

## INTRODUCTION

Section 1: Overview

6.    Cross-Claimant has leased the Property from Cross-Defendant since 2002 pursuant to a written agreement (the "Lease"), which was assumed with the consent of Cross-Defendant from a prior tenant; the lease was originally dated 15 July 1992— nearly 6 months after the Americans with Disabilities Act of 1990 (the "ADA") required Cross-Defendant to eliminate all "readily achievable" barriers to disabled access at the Property. Over 17 years after the ADA passed in 1990, Cross-Defendant still had not made appropriate changes to his property to meet applicable standards in structures required for structures which existed at the time the ADA passed (as the structure(s) on the property did). As discussed below, Cross-Defendant had separate and additional duties before leasing to Cross-Claimant because the Property was open to the public; specifically, Cross-Defendant had a duty to eliminate potentially unsafe conditions at the Property, and many of the provisions of the Access Laws (defined below) relate to conditions on property which could injure persons with disabilities and Cross-Defendant therefore had a duty to fix these

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000 Fax (619) 353-9990

problems before leasing to Cross-Claimant.  On information and belief, Cross-Claimant alleges that Cross-Defendant could have made all changes necessary to eliminate each of the conditions described in the Complaint which are the responsibility of Cross-Defendant without much difficulty or expense, in light of the 17+ years since the ADA passed and the financial resources of Cross-Defendant, and therefore that said changes would be "readily achievable" for Cross-Defendant to make.

7.    Cross-Claimant is informed and believes, and based thereon alleges, that each Cross-Defendant owned, leased or managed some or all of the Property at some time relevant to this action, and because of that, Cross-Defendant had an obligation (the "Access Obligations") to make certain changes to the Property  including, without limitation, the elimination of potential impediments to access by the disabled community as were "readily achievable" to remediate [as the term "readily achievable" is defined under the Americans with Disabilities Act of 1990 (the "ADA"; 42 U.S.C. §12101, *et*. *seq*.), and California and Federal decisions interpreting it], as well as obligations arising under various California laws for the benefit of the disabled (including without limitation California Health & Safety Code §19955, California Code of Regulations, Title 24 §19959, California Civil Code §§ 51, 51.5, 52(a), 52.1, 54, 54.1, 54.3 and 55) and/or other applicable standards, including without limitation applicable building, health and safety and other codes with provisions which operate to reduce the risk of injury or other harm to the disabled in availing themselves of "public accommodations" as that term is defined in the ADA, as well as applicable anti-discrimination statutes such as California's Disabled Persons Act (California Civil Code § 55) and Unruh Act (California Civil §§ 51 through 51.3), all of the citations in this paragraph

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM*   402 West Broadway, Fourth Floor, San Diego, CA 92101   (619) 275-2000   Fax (619) 353-9990

hereinafter collectively referred to as the "Access Laws").

8.    Cross-Claimant did not agree in writing, orally or by conduct to assume the obligation to make improvements to the Property to bring it into compliance with the Access Laws; because a property owner never loses the obligation to ensure that their property complies with applicable law, the question becomes whether the property owner obtained the agreement of the tenant to make any changes which needed to be made.  Where, as here, the lease fails to require tenant to improve the property to meet applicable standards for disabled access, those obligations remain with the property owner.   Because the Complaint alleges joint and several liability of the property owner and commercial tenant, this Cross-Claim seeks, among other things, equitable indemnity to protect Defendant and Cross-Claimant from being held accountable for conditions he never assumed the obligation to improve.

9.    Cross-Claimant would have had to obtain the permission of Cross-Defendants to make most such renovations, which would have inappropriately enriched Cross-Defendants because they would be forfeited by Cross-Claimant at the termination of their respective Lease(s), but would increase the value of the rented Property returned to the landlord (Cross-Defendants); worse still, the lease would have required Cross-Claimant to return the property to the landlord (Cross-Defendant) in generally the same condition in which it was received. This fact, combined with the conduct of the parties and the fact that the terms of the Lease did not require Cross-Defendant to improve the Property (only to repair and maintain it), indicate that it was not the "meeting of the minds" of the original parties to the Lease that the tenant would improve the Property; as such, when Cross-Claimant assumed the Lease, he

could not have undertaken an obligation not intended by the original parties to the Lease.

10.  At the time Cross-Claimant entered into their respective Lease(s), Cross-Claimant compared the respective rent, terms and conditions offered by a number of property owners for similar properties in the area and would not have entered into their respective Lease(s) if Cross-Claimant had been required to make significant or fundamental improvements to real property which would have to be surrendered to the property owner at the conclusion of their respective Lease(s) term.

11.  Cross-Claimant has satisfied each and every obligation owed to Cross-Defendant.  Under the terms of all applicable agreements, Cross-Defendant owed Cross-Claimant varying contractual, implied and/or equitable duties to provide leased premises to Cross-Claimant which, among other things, did not violate any applicable provisions of the Access Laws.

## Section 2: The Law

### Section 2(a): State and Federal Laws for Disabled Access

12.  In 1990, Congress passed the Americans with Disabilities Act of 1990 (the "ADA"), which became effective 26 July 1992 after various legal challenges.  A common misconception is that buildings constructed prior to the effective date of the ADA are "grandfathered" or otherwise exempt from compliance because of their age of the structure. The source of this misconception is believed to be the "grandfathering" which may apply to certain building codes, but is generally inapplicable in the context of civil rights laws; in fact,

©2008 LAWYERS AGAINST LAWSUIT ABUSE.COM  402 West Broadway, Fourth Floor, San Diego, CA  92101  (619) 275-2000  Fax (619) 353-9990

the ADA includes certain provisions which apply to structures which existed at the time it was enacted and which involve a lower level of obligation (the "readily achievable" standard, discussed below) than applies to new construction.

13.    The ADA requires that owners of commercial property which is open to the general public (i.e., "public accommodations") eliminate those actual or potential impediments to access by people with disabilities as may be "readily achievable" to remediate.  Examples of some means of removing impediments to access for people with disabilities is set forth in the ADA Accessibility Guidelines ("ADAAG") and the section of the California Building Code which applies to the adaptation of existing structures to improve access by the disabled (commonly referred to as "Title 24") and specifically include compliant disabled parking areas and paths of travel from the public way.

14.    When the ADA became effective in 1992, some businesses immediately made changes to their existing properties, and over time the way new buildings were constructed began to change to improve access for people with disabilities.  Despite this, many businesses did nothing and others got incorrect information from their building inspectors and government officials which led them to believe they were "grandfathered" and/or did not need to at least make the "readily achievable" changes to their properties.

15.    Over the years, California has passed a number of laws relating to access by the disabled which may in some cases provide minimum damage amounts in cases where a disabled visitor can prove discrimination at a place of business open to the general public;

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM*  402 West Broadway, Fourth Floor, San Diego, CA  92101  (619) 275-2000  Fax (619) 353-9990

Cross-Claimant is informed and believes, and based thereon alleges that Plaintiff is seeking to recover such damages and bases his claim on the failure of the owner(s) of the property to have removed barriers governed by the Access Laws.

16.   Although the obligation to take appropriate steps to remediate potential impediments which could operate to deter visitors with disabilities may depend, among other things, on the financial resources of the parties responsible for doing so, the 17 years which have passed since the ADA was adopted form an important perspective for whether a party responsible for eliminating these barriers has, in fact, remediated all potential obstacles which were "readily achievable" for them to abate:

*"The obligation to engage in readily achievable barrier removal is clearly a continuing one. Over time, barrier removal which was not readily achievable may later be required because of changed circumstances." 28 CFR Part 36*

17.   There have been well over 14,000 ADA/access lawsuits in California to date (see the "Pinnock" page of ADAabuse.com), and your undersigned is not aware of any of them which have resulted in a finding that a commercial property opened to the general public was exempt from compliance solely because of its age.  Even many historical structures have been involved in these ADA/access lawsuits and while what is "readily achievable" for the owner of an older property to do may differ from a more recently constructed building, owners of these properties should not assume that they have no obligations to make appropriate arrangements to accommodate disabled visitors.

18.   More significantly, aside from any obligation(s) Cross-Defendants had to

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000 Fax (619) 353-9990

eliminate those potential impediments under the various Access Laws, Cross Defendants also had a duty to eliminate dangerous conditions on their Property which could injure Cross-Claimant's invitees (under, e.g., <u>Portillo v. Aiassa</u> (1994) 27 Cal App 4th 1128, 1134 and other applicable precedent); certainly, many of the modifications required by the Access Laws were designed to eliminate conditions on real property which could cause injury to the disabled, but which may not be apparent to those who do not struggle with disabilities. Cross-Claimant neither assumed the obligation to improve the Property to remove these impediments, nor undertook it through conduct or implication.

19.   In the Complaint on file in this matter, Plaintiff alleges he was denied access to some or all of the interior and/or exterior of the Property because barriers, which he contends would have been readily achievable for the property owner to remove, continued to exist at the Property 17 years after the ADA was passed; Plaintiff claims to have suffered harm and injury as a result.

20.   Cross-Claimant is informed and believes, and based thereon alleges, that if Plaintiff's claims is true, Cross-Defendants, and each of them, knew or should have known, that certain areas of the Property did not comply with some or all of the Access Laws, as alleged in the Complaint and could pose a risk of injury to the disabled.

21.   Cross-Claimant is informed and believes, and based thereon alleges that despite the foregoing, and the fact that many of the changes sought might have cost less than $100 per month from the date the ADA passed to fix, Cross-Defendant took no action whatsoever

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000 Fax (619) 353-9990

with regard to these matters.  Because of this, they had to know that their failure to make such simple, inexpensive changes would surely subject their tenants, including Cross-Claimant, to an unreasonable risk of claims by visitors from the disabled community.

## Section 2(b): Applicable Landlord/Tenant Law

22.  Cross-Defendants had the obligation to ensure that the Property was safe for foreseeable visitors and invitees:

> "***A landlord owes a duty of care to a tenant*** to provide and maintain safe conditions on the leased premises. (Becker v. IRM Corp. (1985) 38 Cal.3d 454, 467 [213 Cal.Rptr. 213, 698 P.2d 116, 48 A.L.R.4th 601].) (4a) This duty of care also extends to the general public. "***A lessor who leases property for a purpose involving the admission of the public is under a duty to see that it is safe for the purposes intended, and to exercise reasonable care to inspect and repair the premises before possession is transferred*** so as to prevent any unreasonable risk of harm to the public who may enter. [Citations.] ***An agreement to renew a lease or relet the premises ... cannot relieve the lessor of his duty to see that the premises is reasonably safe at that time***." (Burroughs v. Ben's Auto Park, Inc. (1945) 27 Cal.2d 449, 453-454 [164 P.2d 897].)

> "Where there is a duty to exercise reasonable care in the inspection of premises for dangerous conditions, ***the lack of awareness of the dangerous condition does not generally preclude liability***. (Becker v. IRM Corp., supra, 38 Cal.3d at p. 469.) "Although liability might easily be found where the landowner has actual knowledge of the dangerous condition '***[t]he landowner's lack of knowledge of the dangerous condition is not a defense***. He has an affirmative duty to exercise ordinary care to keep the premises in a reasonably safe condition, and therefore must inspect them or take other proper means to ascertain their condition. And if, by the exercise of reasonable care, he would have discovered the dangerous condition, he is liable.' " (Swanberg v. O'Mectin (1984) 157 Cal.App.3d 325, 330 [203 Cal.Rptr. 701].)"
>
> Portillo v. Aiassa (1994) 27 Cal App 4th 1128, 1134 emphasis added]

23.  Cross-Claimant alleges that any failure of Cross-Defendant to remediate any

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000 Fax (619) 353-9990

access impediment which would have been "readily achievable" for them to eliminate prior to leasing the Property to Cross-Claimant would have left conditions which could potentially injure disabled visitors.

24.    Cross-Claimant knew that the Property would be open to the general public; a certain percentage of the general public-- which some have estimated to be as high as 20% or more-- contend with disabilities and may need alternative arrangements, such as grab bars in restrooms, curb ramps, smooth and level paths of access, railings, dispensers and mechanisms which require neither twisting or grasping, etc.  Because there is a risk of injury to the disabled if such improvements are not in place when needed, it was foreseeable that a visitor with disabilities might come to the Property, and the unreasonable failure of the premises to meet applicable access standards could pose an unnecessary risk of injury to such individual.

<u>Section 3: The Lease</u>

**<u>Section 3(a): Cross-Defendant retained
the obligation to make renovations</u>**

25.    Cross-Claimant realleges and incorporate by this reference each and every allegation contained in Paragraphs 1 through 24 of this Cross-Claim, as though fully set forth herein.

26.    Because Cross-Defendant did not transfer the obligation to improve the Property to Cross-Claimant, Cross-Defendant remained responsible for ensuring that the Property

complied with all applicable laws including without limitation the Access Laws. Cross-Defendant prepared the Lease and were free to propose apportioning responsibility for compliance with the Access Laws in the common areas between landlord and tenant in any of a number of different arrangements; however, Cross-Claimant was induced to enter into the Lease agreement on the price and terms he did based on the balance of obligations established between landlord and tenant and would not have done so under other terms. For example, Cross-Claimant would not have entered the Lease agreement if it had required Cross-Claimant, as a mere commercial tenant, to make significant permanent renovations to the Property which would only have to be surrendered to Landlord at lease-end.

## Section 3(b): The prevailing party is entitled to attorneys fees and costs

27. Cross-Claimant realleges and incorporate by this reference each and every allegation contained in Paragraphs 1 through 26 of this Cross-Complaint, as though fully set forth herein.

28. Cross-Defendant prepared the Lease and were free to propose whatever balance of obligations between landlord and tenant they felt were appropriate in exchange for the amount of rent they sought; they chose the balance set forth by the terms and conditions in their respective Lease(s). Their respective Lease(s) between the parties provides for an award of attorneys' fees, litigation expenses and costs to the prevailing party in any dispute between Landlord and Tenant which expenses should be awarded to Cross-Claimant in this matter. Accordingly, and among other things, this Cross-Claim seeks a

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000 Fax (619) 353-9990

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM*  402 West Broadway, Fourth Floor, San Diego, CA 92101  (619) 275-2000  Fax (619) 353-9990

declaration of the rights and duties of the parties to the Lease, as well as a determination of which of them is responsible for many any required improvements for access by people with disabilities at the Property.  Cross-claimant has outlined below a number of issues he believe are in contention with Cross-Defendant; to the extent this Court concludes that Cross-Claimant is correct, and Cross-Defendant incorrect as to those obligations, Cross-Claimant seeks an award of legal fees and an order compelling Cross-Defendant to make the required improvements.

## FIRST CLAIM FOR RELIEF

### (DECLARATORY RELIEF)

29.    Cross-Claimant realleges and incorporate by this reference each and every allegation contained in Paragraphs 1 through 28 of this Cross-Claim, as though fully set forth herein.

30.    Actual controversies have arisen and now exist between the Cross-Claimant and Cross-Defendants concerning their respective rights and duties, in that:

a)    Cross-Claimant contends that Cross-Defendant is responsible for any and all conditions on the property which existed prior to Cross-Claimant's first occupancy of the Property in 2002; specifically, Cross-Claimant contends that he did not undertake the obligation— whether by agreement, conduct or otherwise— to improve Cross-Defendant's Property to meet applicable standards for access by people with disabilities.

b)    Cross-Claimant contends that, because there is no agreement or any sort (whether by writing, conduct, implication or otherwise) between Cross-Complainant and Cross-Defendant which would require Cross-Claimant to improve any portion of the Property to meet applicable requirements for access by people with disabilities, Cross-Defendant, as the owner of the Property at all times relevant hereto, remains exclusively responsible for so doing.

c)    Cross-Claimant contends that if Cross-Claimant is required to pay, whether by judgment, settlement or otherwise, any amount, or incur any obligation or expense (including without limitation litigation expenses, legal fees and costs) in connection with any condition which existed at the Property prior to Cross-Claimant's first occupancy thereof in 2002, that Cross-Claimant is entitled to, *inter alia*, equitable indemnify from Cross-Defendant.

d)    Cross-Claimant contends that if it was not "readily achievable" for Cross-Defendant to install a compliant parking area, reserved and properly configured for people with disabilities with an appropriate "van accessible" access aisle by 25 January 1992, it did become "readily achievable" for Cross-Defendant to do so at some point prior to Plaintiff's alleged visit to the premises.

e)    Cross-Claimant contends that if it was not "readily achievable" for Cross-

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM*  402 West Broadway, Fourth Floor, San Diego, CA  92101  (619) 275-2000  Fax (619) 353-9990

Defendant to install a compliant path of travel from the City sidewalk by 25 January 1992, it did become "readily achievable" for Cross-Defendant to do so at some point prior to Plaintiff's alleged visit to the premises.

f)    Cross-Claimant contends that if it was not "readily achievable" for Cross-Defendant to install a restroom properly configured for access by people with disabilities by 25 January 1992, it did become "readily achievable" for Cross-Defendant to do so at some point prior to Plaintiff's alleged visit to the premises.

g)    Cross-Claimant contends that slopes in excess of 2% in any direction in a parking area can create a situation in which someone confined to a wheelchair could be subject to an unnecessary risk of injury; accordingly, Cross-Claimant contends that to the extent the parking area at the property had a slope significantly in excess of this amount, Cross-Defendant was required to ensure that an appropriate portion thereof was leveled and appropriately configured for "van accessible" disabled parking, with an appropriate access aisle before leasing to Cross-Claimant.

h)    Cross-Claimant contends that if there is no path of travel to a public business which meets applicable standards for wheelchair access there is an unnecessary risk of injury to someone confined to a wheelchair who may want to, or need to, visit the business; accordingly, Cross-Claimant contends that Cross-Defendant was required to ensure that at least one wheelchair

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM*  402 West Broadway, Fourth Floor, San Diego, CA  92101  (619) 275-2000  Fax (619) 353-9990

compliant path of travel existed to the business at the Property before leasing to Cross-Claimant.

i)  Cross-Claimant contends that restrooms which are open to the public at a commercial property pose a special risk of injury to certain people with disabilities if they are not appropriately configured for, among other things, wheelchair access; for example, if a restroom does not provide appropriate turning radius, someone confined to a wheelchair could be trapped in an emergency.  If appropriate grab bars are not installed, an individual could become injured while transferring from their wheelchair to the seating surface in the restroom.  Cross-Claimant contends that Cross-Defendant entered into the Lease knowing and intending that the restroom at the Property would be open to the public and had a duty to ensure that no conditions in the restroom (or the restroom itself) could injure users with disabilities.

j)  Cross-Claimant contends that that any provisions in the Lease which would require Cross-Claimant to indemnify Cross-Defendant would not apply in this action to any conditions which existed at the Property prior to Cross-Claimant's first occupancy thereof in 2002; in other words, Cross-Claimant contends that Cross-Defendant may not seek indemnification for his own failure to comply with applicable law.

k)  Cross-Claimant contends that that any provisions in the Lease which would

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000 Fax (619) 353-9990

require Cross-Claimant to "repair" or "maintain" items at the Property would not require Cross-Claimant to improve any items which were not broken, worn out, or otherwise in need of repair, solely because such items failed to comply with applicable law; in other words, that the obligation to repair or maintain in a commercial lease do not require the obligor to alter items which are not in need of repair or maintenance, but merely do not comply with applicable law.

l)    Cross-Claimant contends that that any provisions in the Lease which would require Cross-Claimant to comply with applicable laws at the Property would not require Cross-Claimant to improve the Property to meet applicable standards for access by people with disabilities, but instead that such obligations regulate the conduct of Cross-Claimant's business operations within the leased premises.

m)   Cross-Claimant contends that there is no agreement (e.g., one reached by conduct, implication or otherwise) between the parties other that the Lease with regard to the rights and obligations of the parties to improve the Property to meet applicable standards for access by people with disabilities; accordingly, Cross-Claimant that the Lease exclusively governs the rights and obligations of the parties thereto with regard to improving the Property to meet applicable requirements for access by people with disabilities.

n)    Cross-Claimant contends that by Cross-Defendant's failure to make

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000 Fax (619) 353-9990

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000  Fax (619) 353-9990

appropriate changes to the Property to ensure that it complied with applicable requirements for disabled access, Cross-Claimant is entitled to, *inter alia*, equitable indemnity as to any harm, liability or expense Cross-Claimant may incur in this matter relating to any condition which existed at the Property before Cross-Claimant took possession in 2002 and which was required to be changed to comply with applicable requirements for access by people with disabilities.

o)    Cross-Claimant alleges that if Cross-Claimant is adjudged to pay damages or money by way of judgment or settlement, or other relief is awarded in the Lawsuit against Cross-Claimant,  any such payment by, or award against, Cross-Claimant was legally and proximately caused in whole or in part by Cross-Defendants (except to the extent it specifically related to any significant change made by Cross-Claimant at the Property), and that Cross-Defendant should be required to reimburse Cross-Claimant for the same. Cross-Claimant is informed and believes, and based thereon alleges, that Cross-Defendant denies these claims.

p)    Cross-Claimant contends that Cross-Defendant is estopped from asserting that any provision of the Lease would require Cross-Claimant, as the commercial tenant, to improve the Property to meet applicable requirements for access by people with disabilities because, during the entire term of the Lease which began in 1992, Cross-Defendant never sought any commercial

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM*  402 West Broadway, Fourth Floor, San Diego, CA 92101  (619) 275-2000  Fax (619) 353-9990

tenant to make such changes and did not inform Cross-Claimant in approving his assignment of the Lease in 2002 that any previous tenant had been in default of any provision under the Lease or any duty arising from it.

q)    No provision of the Lease, nor any other agreement or conduct of the parties, creates an obligation for Cross-Claimant to improve any condition on the Property which existed before Cross-Claimant first took possession in 2002, except for any conditions Cross-Claimant created or significantly changed.

On information and belief, Cross-Claimant alleges that Cross-Defendant denies or disputes each of the foregoing contentions by Cross-Claimant.  The Lease provides for the recovery of attorneys' fees by a successful litigant in any litigation between the parties; accordingly, Cross-Claimant seek an award of legal fees, litigation expenses and costs for the necessary legal work required to resolve the foregoing questions.

31.  On or about 19 May 2008, Cross-Claimant his demand for defense and indemnity and defense to Cross-Defendant and has not received any response to this demand as of the date your undersigned concluded it was appropriate to respond to the Complaint; accordingly, Cross-Claimant seeks a declaration of the rights and duties of the parties as to each of the foregoing issues.

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000 Fax (619) 353-9990

## SECOND CLAIM FOR RELIEF

### (BREACH OF CONTRACT)

32.    Cross-Claimant re-alleges and incorporates by this reference each and every allegation contained in Paragraphs 1 through 31 of this Cross-Claim, as though fully set forth herein.

33.    Cross-Claimant is informed and believes, and based thereon alleges that a valid contract existed between Cross-Claimant and Cross-Defendants at all times relevant to the Complaint and this Cross-Claim and that this contract was evidenced, at least in part, by a written commercial lease agreement (the "Lease" as defined above).

34.    Cross-Claimant alleges that the Lease fails to transfer to Cross-Claimant the obligation to improve the Property to comply with the Access Laws, and therefore, that any such obligation would be solely that of the Cross-Defendants.

35.    Cross-Claimant alleges that implied in every contract is the implied covenant of good faith and fair dealing, the implied warranty of habitability, the implied warranty of fitness for purpose, etc., and that Cross-Defendant knew that this property would be used for a coin laundry; accordingly, Cross-Claimant contends that because Cross-Defendant did not transfer the obligation to cause the Property to comply with applicable laws to the tenant (i.e., Cross-Claimant, Cross-Defendant remained responsible for this obligation, which is a reasonably implied term in the Lease.  In short, Cross-Claimant contends that whether a lease expressly provides for it or not, one party or the other in any commercial lease is

obligated to ensure that commercial property open to the public meets all requirements for disabled access [Botosan v. Fitzhugh (1998) 13 F. Supp 2d 1047]; as between landlord and tenant, if the property owner does not transfer this obligation to the tenant, the property owner remains responsible for it.

36.    Cross-Claimant performed all duties and obligations required under the Lease. Cross-Claimant have satisfied each and every obligation owed to Cross-Defendants under the terms of all applicable agreements. In exchange, Cross-Defendant owed Cross-Claimant contractual, implied and/or equitable duties to provide leased premises to Cross-Claimant which, among other things, did not violate the Access Laws.  The Complaint alleges that there is or may be a number of areas of nonconformity in both the interior and exterior of the Property and that these constitute noncompliance with the Access Laws, and which could also expose Cross-Claimant to potential liability.

37.    Cross-Claimant did and has at all times paid his obligations as required and has fully performed his obligations as tenant under the Lease.

38.    Cross-Claimant alleges that Cross-Defendant failed to perform substantially his part of the bargain. Cross-Claimant alleges that Cross-Defendant's failure to perform adequately under the Lease is neither justified nor excused.

39.    Cross-Claimant has been damaged by Cross-Defendants' failed performance and now Cross-Claimant is at risk for the payment of damages, and has been forced to incur

©2008 LAWYERS AGAINST LAWSUIT ABUSE.COM  402 West Broadway, Fourth Floor, San Diego, CA 92101  (619) 275-2000  Fax (619) 353-9990

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000 Fax (619) 353-9990

significant legal expense to respond to the Complaint.  Cross-Defendants' continuing failure to comply with the Access Laws subjects Cross-Claimant to further access lawsuits and thus future damages as yet unknown.

40.    Cross-Claimant seeks an award of damages against Cross-Defendants for Breach of Contract and an Order compelling Cross-Defendants to cause the Property and its Common areas to comply with all applicable Access Laws. Additionally, the Lease provides for the recovery of attorneys' fees by a successful litigant in any litigation between the parties; accordingly, Cross-Claimant seek an award of legal fees, litigation expenses and costs for the necessary legal work required to resolve the foregoing questions.

## THIRD CLAIM FOR RELIEF

### (NEGLIGENCE)

41.    Cross-Claimant re-alleges and incorporate by this reference each and every allegation contained in Paragraphs 1 through 40 of this Cross-Claim, as though fully set forth herein.

42.    Cross-Claimant performed all duties and obligations under the Lease and all other agreements between the parties.   Cross-Claimant has satisfied each and every obligation owed to Cross-Defendant. The Complaint alleges that there is or may be a number of areas of nonconformity in both the interior and exterior of the Property and that these purported nonconformities also constitute noncompliance with the Access Laws, and which could also give rise to potential liability against the tenants under such tort theories as

negligence and unfair business practices.

43.   At all times relevant hereto, Cross-Defendants had a duty to use reasonable care not to expose customers of Cross-Claimant to any unreasonable risk of harm, including but not limited to noncompliance with the ADA.

44.   Cross-Claimant is informed and believes, and based thereon alleges, that the Cross-Defendants have breached their duty of care by Cross-Defendants' failure to ensure that the Property meets all applicable requirements for disabled access.

45.   As a proximate result of Cross-Defendants' negligence, wrongful conduct and omissions alleged above, Cross-Claimant have suffered to date damages in an amount as yet unknown but in excess of the minimum amount necessary to invoke this Court's jurisdiction. The Lease provides for the recovery of attorneys' fees by a successful litigant in any litigation between the parties; accordingly, Cross-Claimant seek an award of legal fees, litigation expenses and costs for the necessary legal work required to resolve the foregoing questions.

### FOURTH CLAIM FOR RELIEF

(INJUNCTIVE RELIEF)

46.   Cross-Claimant re-alleges and incorporate by this reference each and every allegation contained in Paragraphs 1 through 45 of this Cross-Claim, as though fully set forth herein.

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM*   402 West Broadway, Fourth Floor, San Diego, CA 92101  (619) 275-2000  Fax (619) 353-9990

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000 Fax (619) 353-9990

47.   Cross-Claimant performed all duties and obligations under the Lease and all other agreements between the parties.   Cross-Claimant has honored each and every obligation owed to Cross-Defendant under the terms of all applicable agreements.   In exchange, Cross-Defendants owed Cross-Claimant contractual, implied and/or equitable duties to provide leased premises to Cross-Claimant which, among other things, did not violate any applicable provisions of the Access Laws.  In exchange for payment of rent and satisfaction of other conditions of their tenancy, Cross-Claimant bargained for not only a premises habitable to operate its business for themselves and their employees, but also a leased premises which would not unknowingly subject Cross-Claimant to legal action by potential or actual customers and patrons which alleged that certain areas of Cross-Claimant' business premises failed to comply with the Access Laws.  The Complaint alleges that there are or may be a number of areas of nonconformity in both the interior and exterior of the Property and that these purported nonconformities also constitute noncompliance with the Access Laws, and which could also give rise to potential claims against the tenants under such tort theories as negligence and unfair business practices.

48.   Cross-Claimant is informed, believes and thereon alleges that Cross-Defendants is and at all times relevant hereto have been the owner(s), manager(s) and/or lessor(s) of the Property.

49.   At all times relevant hereto Cross-Defendants had a duty to use reasonable care in their use and maintenance of the Property, especially those areas of the Property under its

exclusive and sole control, so as not to cause harm to Cross-Claimant, or their visitors and invitees.  Cross-Claimant alleges that the failure of Cross-Defendant to ensure that the Property met all applicable requirements for disabled access was both wrongful and unjustified, entitling Cross-Claimant to the relief sought herein.

50.  Cross-Claimant is informed and believes, and based thereon alleges, that the Cross-Defendants have breached their duty of care to Cross-Claimant by their wrongful conduct and omissions as alleged above and were also negligent in their use and maintenance of the Property.

51.  Cross-Claimant believes and alleges that Cross-Defendants as owners and lessors of the Property owed a duty of care to Cross-Claimant, as their tenant,  to ensure that the Property would not expose the Tenant, or their visitors and invitees, to known or discoverable harm.  As a proximate result of Cross-Defendant's failure to comply with statutory requirements to ensure that the Property meets applicable standards for disabled access, Cross-Claimant has suffered to date damages in excess of the minimum jurisdictional amount of this Court, to be proved at trial.

52.  Cross-Defendant's unjustified failure to ensure that the Property meets all applicable requirements for access by people with disabilities subjects Cross-Complainant to a continuing risk or lawsuits.  Because Cross-Claimant does not own the property and the Lease would have to return the Property to the condition in which it existed at the inception of the Lease, Cross-Claimant did not undertake the obligation to improve the Property which

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000 Fax (619) 353-9990

would be surrendered to Cross-Defendant at the end of the Lease, and making the same improvements to the Property would be far more costly for Cross-Claimant than Cross-Defendant (who is the only one of the two required to make the changes).  The business at the Property is Cross-Claimant's livelihood and there is no justification for Cross-Defendant's failure to cause the Property to comply with applicable law.  No remedy at law or financial damages are sufficient to cause the Property to comply with applicable law, and Cross-Claimant will continue to be subject to the risk of further litigation until Cross-Defendant makes the changes, most of which were required in 1992.  This Court should issue an injunction to compel Cross-Defendant to make all necessary improvements to cause the Property to meet applicable standards for access by people with disabilities; at the very least, this should include an order requiring the installation of a compliant "van accessible" disabled parking area, and path of travel from the City sidewalk.  The Lease provides for the recovery of attorneys' fees by a successful litigant in any litigation between the parties; accordingly, Cross-Claimant seek an award of legal fees, litigation expenses and costs for the necessary legal work required to resolve the foregoing questions.

## **FIFTH CLAIM FOR RELIEF**

### (EQUITABLE INDEMNITY)

53.   Cross-Claimant re-alleges and incorporates by this reference each and every allegation contained in Paragraphs 1 through 52 of this Cross-Claim, as though fully set forth herein.

54.   Cross-Defendant owns the Property, and as an owner of commercial property

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM*  402 West Broadway, Fourth Floor, San Diego, CA  92101  (619) 275-2000  Fax (619) 353-9990

open to the public, cannot avoid the obligation to ensure that such property meets applicable requirements for access by people with disabilities.  Cross-Claimant did not undertake— by writing, conduct, implication or otherwise— the obligation to cause the Property to comply with the Access Laws; the last date for Cross-Defendant to cause the Property to comply with the Access Laws was 26 January 1992.   Cross-Claimant has discharged all obligations to Cross-Defendant under all agreements between the parties.

55.   The Complaint alleges that portions of the do not meet applicable requirements for disabled access (for example, the parking area and path of travel from the City sidewalk); no provision of the Lease requires Cross-Claimant to make the considerable improvements which would be required to ensure that these areas meet all required standards for access by people with disabilities.   Cross-Claimant is entitled to equitable indemnity from Cross-Defendant in this action because (1) the claims relate to conditions which existed prior to the inception of the Lease (2) Cross-Claimant did not undertake the obligation to improve said conditions, and (3) said conditions are required to be changed in order to comply with applicable laws for access by people with disabilities; if Cross-Defendant is not required to indemnify Cross-Claimant, he will be unjustly enriched and Cross-Claimant will be held responsible for conditions he had never undertaken the obligation to improve.   Cross-Claimant alleges that the failure of Cross-Defendant to ensure that the Property met all applicable requirements for disabled access was both wrongful and unjustified, entitling Cross-Claimant to the relief sought herein. The Lease provides for the recovery of attorneys' fees by a successful litigant in any litigation between the parties; accordingly, Cross-Claimant seek an award of legal fees, litigation expenses and costs for the necessary legal work required to resolve the foregoing questions.

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM*  402 West Broadway, Fourth Floor, San Diego, CA  92101  (619) 275-2000  Fax (619) 353-9990

## SIXTH CLAIM FOR RELIEF

### (CONTRIBUTION AND APPORTIONMENT)

56.  Cross-Claimant re-alleges and incorporates by this reference each and every allegation contained in Paragraphs 1 through 55 of this Cross-Claim, as though fully set forth herein.

57.  Cross-Claimant performed all duties and obligations under the Lease.  Cross-Claimant has honored each and every obligation owed to Cross-Defendant under the terms of all applicable agreements between the parties. In exchange, Cross-Defendant owed Cross-Claimant contractual, implied and/or equitable duties to provide leased premises to Cross-Claimant which, among other things, did not violate any applicable provision(s) of the Access Laws.  In short, in exchange for payment of rent and satisfaction of other conditions of its tenancy, Cross-Claimant bargained for not only a premises habitable to operate his business for himself and his employees, but also a leased premises which would not unknowingly subject Cross-Claimant to legal action by potential or actual customers and patrons which alleged that certain areas of the Property failed to comply with any applicable provision(s) of the Access Laws.  The Complaint alleges that there is or may be a number of areas of nonconformity in both the interior and exterior of the Property and that these purported nonconformities also constitute noncompliance with the Access Laws, and which could also give rise to potential liability against the Cross-Claimant under such tort theories as negligence and unfair business practices.

58. As set forth above, under the circumstances, Cross-Claimant is entitled to contribution from Cross-Defendants, and each of them, for any sums paid out in settlement or to satisfy any judgment awarded against Cross-Claimant arising from the allegations in the Action.

59. Cross-Claimant is informed and believes, and thereon alleges, that the negligent or other wrongful conduct of Cross-Defendant contributed in a presently undetermined percentage to the matters set forth in the Complaint. Cross-Claimant is further informed, believes and thereon alleges that Cross-Claimant is entitled to contribution from, and apportionment of, the liability of these Cross-Defendants, and each of them, to the extent the legally responsible conduct of said Cross-Defendants proximately caused and contributed to the above-described matters, so that the liability and payment of damages or settlement amounts is ultimately assessed among the parties in direct proportion to the percentage of fault attributable to the parties. The Lease provides for the recovery of attorneys' fees by a successful litigant in any litigation between the parties; accordingly, Cross-Claimant seek an award of legal fees, litigation expenses and costs for the necessary legal work required to resolve the foregoing questions.

**WHEREFORE,** Cross-Claimant prays for judgment against Cross-Defendants, and each them, as follows:

1. For damages for Breach of Contract;

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000  Fax (619) 353-9990

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM*  402 West Broadway, Fourth Floor, San Diego, CA  92101  (619) 275-2000  Fax (619) 353-9990

2. For an Order compelling the Cross-Defendants to cause the Property and its Common areas to comply with all applicable provisions of the Access Laws.

3. For a declaration of equitable indemnity, apportionment and contribution against Cross-Defendant as set forth and requested herein in an amount to be determined at trial;

4. For a mandatory injunction ordering the Cross-Defendant to comply with applicable portions of the Access Laws.

5. For reasonable attorney fees and costs incurred herein as allowed by the Lease(s) and applicable law;

6. For costs of suit; and

7. For such other and additional relief as the Court may deem just and proper.

*Respectfully submitted,*

Dated:  21 May 2008                    Lawyers Against Lawsuit Abuse, APC

s/ DAVID W. PETERS, Attorney for
Defendant/Cross-Claimant
Glenn Douglas
Email: dpeters@ascervus.com

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM* 402 West Broadway, Fourth Floor, San Diego, CA 92101 (619) 275-2000 Fax (619) 353-9990

Lawyers Against Lawsuit Abuse, APC
David W. Peters, SB#155449
402 West Broadway, Suite 400
San Diego, CA 92101
(619) 275-2000 / FAX (619) 353-9990
dpeters@ascervus.com

Attorney for DEFENDANT and CROSS-CLAIMANT
Glenn Douglas

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREL SPIKES<br><br>                   Plaintiff,<br><br>v.<br><br>GLENN DOUGLAS dba THE WASH HOUSE;<br>LEE FAMILY TRUST 11-27-90 and DOES 1<br>THROUGH 10, Inclusive,<br><br>                  Defendants. | CASE NO: 08 CV 0690 L (POR)<br><br>**CROSS-CLAIM OF DEFENDANT AND CROSS-CLAIMANT GLENN DOUGLAS FOR:**<br><br>  **1. DECLARATORY RELIEF**<br>  **2. BREACH OF CONTRACT**<br>  **3. NEGLIGENCE**<br>  **4. EQUITABLE INDEMNITY**<br>  **5. CONTRIBUTION &**<br>     **APPORTIONMENT**<br>  **6. INJUNCTIVE RELIEF** |
| GLENN DOUGLAS dba THE WASH HOUSE,<br><br>              Cross-Claimant,<br><br>v.<br><br>EARL J. LEE, AS TRUSTEE, THE LEE<br>FAMILY TRUST 11-27-90, and ROES 1<br>through 10, inclusive,<br><br>          Cross-Defendants. | Complaint Filed: 16 April 2008 |

I, the undersigned, hereby declare that I am a resident of the State of California and am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action; my business address is Lawyers Against Lawsuit Abuse, APC, 402 West Broadway, Suite 400, San Diego, CA 92101.

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM*  402 West Broadway, Fourth Floor, San Diego, CA  92101  (619) 275-2000  Fax (619) 353-9990

On 21 May 2008, I served the foregoing document described as:

**1.  CROSS-CLAIM OF DEFENDANT AND CROSS-CLAIMANT GLENN DOUGLAS**

on the parties in this action by serving:

Amy B. Vandeveld, Esq.                     Mr. Earl J. Lee, Trustee
Law Offices of Amy B. Vandeveld       Lee Family Trust 11-27-90
1850 Fifth Avenue, Suite 22               2169 West Drive
San Diego, CA 92101                          El Cajon, CA 92021

(X) By Envelope - by placing ( ) the original (X) a true copy thereof enclosed in sealed envelope(s) addressed as above and delivering such envelope(s):

(X) By Mail:  As follows:  I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Diego, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

( ) By Facsimile Transmission:  By use of facsimile machine telephone number listed above, I served a copy of the above-listed document(s) to the offices of the addressee(s) by transmitting same via facsimile machine.  The facsimile machine I used complied with California Rules of Court, Rule 2004, and no error was reported by the machine.  Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission.

(X) By Electronic Service Transmission via the United States District Court, Southern Division, Case Management/Electronic Case Files, Filing System.   I served a copy of the above-listed document(s) to the e-mail addresses of the addressee(s) by use of email as identified and maintained therein.

( ) By Email Transmission:  By use of email, I served a copy of the above-listed document(s) to the offices of the addressee(s) by sending the same via electronic mail transmission.

( )  By Personal Service:  I delivered such envelope(s) by hand to the offices of the addressee(s).

(X) FEDERAL  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on 21 May 2008, at San Diego, California

s/ DAVID W. PETERS

Email: dpeters@ascervus.com

©2008 *LAWYERS AGAINST LAWSUIT ABUSE.COM*  402 West Broadway, Fourth Floor, San Diego, CA  92101  (619) 275-2000  Fax (619) 353-9990

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28